[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13403
Non-Argument Calendar

_____

D.C. Docket No. 3:17-cr-00089-BJD-JBT-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON JAMES NEIHEISEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 6, 2019)

Before MARCUS, WILSON and HULL, Circuit Judges.

PER CURIAM:

Jason James Neiheisel appeals his conviction for distribution of child

pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), following a jury trial.

On appeal, he argues that: (1) insufficient evidence supported his conviction and his

uncorroborated confession could not be considered evidence of his guilt; (2) prosecutorial misconduct permeated the trial because the government asked improper questions, referenced inadmissible reports, improperly impeached Neiheisel and his character witnesses, and made improper remarks during closing argument; (3) the district court erred in denying his motion for a new trial based on the weight of the evidence because it only considered the evidence under the legal standard for a judgment of acquittal; (4) his trial counsel provided ineffective assistance by failing to investigate a potential alibi defense; and (5) the cumulative error doctrine compels reversal. After thorough review, we affirm.

We review whether sufficient evidence supported a jury's verdict de novo, viewing the evidence in the light most favorable to the government and resolving all reasonable inferences and credibility evaluations in favor of the verdict. United States v. Foster, 878 F.3d 1297, 1303-04 (11th Cir. 2018). We also review rulings on prosecutorial misconduct de novo. United States v. Nerey, 877 F.3d 956, 969 (11th Cir. 2017). We review a district court's refusal to grant a mistrial and its denial of a motion for a new trial for abuse of discretion. United States v. Grzybowicz, 747 F.3d 1296, 1304 (11th Cir. 2014); United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007). When properly preserved, we review evidentiary issues for abuse of discretion too. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000).

2

But if the defendant failed to specifically object to testimony that he now challenges on appeal, we review its admission only for plain error. United States v. Langford, 647 F.3d 1309, 1325 n.11 (11th Cir. 2011). To establish plain error, the defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). If the defendant satisfies these conditions, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. An error is plain only if it is clear or obvious under current law. United States v. Daniels, 685 F.3d 1237, 1251 (11th Cir. 2012).

I.

First, we are unpersuaded by Neiheisel's claim that insufficient evidence supported his conviction. A conviction must be affirmed if a reasonable fact-finder could have reached a conclusion of guilt beyond a reasonable doubt. Foster, 878 F.3d at 1304. A jury is free to choose among reasonable constructions of the evidence, so it is unnecessary that the government disprove every reasonable theory of innocence. Id. We apply the same standard to assess the sufficiency of both direct and circumstantial evidence, but a conviction based on circumstantial evidence must be supported by reasonable inferences, and not mere speculation. United States v. Martin, 803 F.3d 581, 587 (11th Cir. 2015).

Credibility determinations are left to the jury.  United States v. Flores, 572 F.3d 1254, 1263 (11th Cir. 2009).  We will not disregard them unless the testimony is unbelievable on its face or incredible as a matter of law, meaning it contains facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature.  Id.  If the defendant testified at trial, the jury is free to disbelieve his statements and consider them as substantive evidence of his guilt.  United States v. Shabazz, 887 F.3d 1204, 1220 (11th Cir. 2018).

A defendant's uncorroborated confession alone is not enough to support a conviction, and the government must introduce independent evidence to establish the trustworthiness of the confession.  United States v. Morales, 893 F.3d 1360, 1370-71 (11th Cir. 2018).  But the corroborating evidence alone does not have to prove the offense beyond a reasonable doubt or even by a preponderance of the evidence.  Id. at 1371.  Instead, the corroborating evidence must only support the defendant's confession enough to justify the jury's inference that it was true.  Id. The defendant's admission may properly be considered where the surrounding circumstances connect the defendant to the conduct he admitted.  See United States v. Green, 873 F.3d 846, 853-54 (11th Cir. 2017).

A conviction for distribution of child pornography requires proof that the defendant (1) knowingly distributed (2) images of a minor (3) depicting the minor engaging in sexually explicit conduct (4) using a facility of interstate or foreign

4

commerce. 18 U.S.C. § 2252(a)(2). Knowingly placing or leaving child pornography in a shared folder connected to a peer-to-peer network constitutes child pornography distribution under § 2252(a)(2). United States v. Carroll, 886 F.3d 1347, 1353 (11th Cir. 2018). But the government must prove beyond a reasonable doubt that the defendant knew he was sharing the files or that they were being automatically distributed to the peer-to-peer network. See id. In Carroll, we held that the presence of a peer-to-peer program alone was insufficient to prove the defendant knew of the distribution where there was no evidence he had authorized the file-sharing or recognized that his downloaded files were being shared. Id. at 1354. "Without some proof that the defendant consciously shared files, either by authorizing their distribution or knowingly making them available to others, he cannot be held liable for knowing distribution under Section 2252(a)(2)." Id.

Here, it is undisputed that the child pornography charged in the indictment was shared via a peer-to-peer network that was connected to an Internet Protocol ("IP") address registered to Neiheisel at an address where he resided during the charged dates. It is also undisputed that no traces of child pornography were found on Neiheisel's tablet but a BitTorrent program, Vuze, had been installed on the device. Because the government and Neiheisel presented two opposing versions of Neiheisel's statements about his downloading and sharing of child pornography

using peer-to-peer software, the jury was required to make a credibility determination about which version was true.

We cannot say the jury's guilty verdict was not supported by a reasonable construction of the evidence. As the record reflects, testimony from two Federal Bureau of Investigation ("FBI") agents supported a finding that Neiheisel had knowingly shared child pornography through a peer-to-peer network. See Carroll, 886 F.3d 1353-54. Agents Privette and MacDonald both testified that Neiheisel had admitted that he had downloaded child pornography, specifically, the videos charged in the indictment, and stored them in a shared downloads folder connected to a peer-to-peer network. The agents added that Neiheisel told them that he periodically deleted his child pornography because he knew it could potentially be shared and discussed how the sharing mechanism worked. And while Neiheisel denied that he ever said any of this to the FBI, the jury was free to make its own credibility determinations, disbelieve Neiheisel's testimony -- that he had never downloaded child pornography, did not understand how BitTorrent worked, and never admitted anything to the FBI about either -- and use it as substantive evidence of his guilt. Shabazz, 887 F.3d at 1220. The jury's guilty verdict reveals that it found the agent's version of events more credible and disbelieved Neiheisel's version, a determination that was supported by reasonable inferences drawn from the evidence.

In addition, sufficient independent evidence supports the truthfulness of Neiheisel's admissions to the FBI. See Morales, 893 F.3d at 1370-71. As we've noted, the videos were downloaded from an IP address registered to Neiheisel at an address where he resided on the charged dates, and a peer-to-peer networking program was found on his tablet. See Green, 873 F.3d at 853-54. As for Neiheisel's reliance on expert testimony that the seized tablet contained no traces of child pornography, the government was not required to prove what device was used to distribute the child pornography, only that Neiheisel knowingly placed the child pornography in a shared folder and knew that doing so gave others on the peer-to-peer network access to the files. Carroll, 886 F.3d 1353-54. Because the FBI agents' testimony supported the jury's finding on knowledge, and Neiheisel does not dispute that the downloaded files were child pornography, the government proved the elements of distribution of child pornography beyond a reasonable doubt.[1]

## II.

We also find no merit to Neiheisel's prosecutorial misconduct claims. Prosecutorial misconduct only warrants a new trial if the prosecutor's conduct was (1) improper and (2) prejudicial to the defendant's substantial rights. See Nerey,

---

[1] As for Neiheisel's citations to cases from other circuits -- involving devices that multiple people had access to -- those cases did not involve contradictory testimony that required the jury to make a credibility determination. Because the sufficiency of the evidence in Neiheisel's case turns on the jury's credibility determination, and not on evidence that multiple users had access to the device that shared the child pornography, these cases are not instructive.

877 F.3d at 970.  The defendant's substantial rights are prejudiced when there is a reasonable probability that, but for the misconduct, the outcome of the trial would have been different.  Id.  However, a curative instruction to the jury or substantial evidence establishing guilt can counteract the prosecutor's misconduct.  See id.  Moreover, prosecutorial misconduct only requires reversal if it "permeate[s] the entire atmosphere of the trial."  United States v. Bergman, 852 F.3d 1046, 1070 (11th Cir. 2017) (quotation omitted).

A mistrial is warranted if the defendant's substantial rights are prejudicially affected -- i.e., there is a reasonable probability that, but for the challenged conduct, the outcome of the trial would have been different.  Newsome, 475 F.3d at 1227.  When the district court gives a curative jury instruction, we will only reverse if the evidence was so highly prejudicial that it was incurable.  Id.  If the record contains sufficient independent evidence of guilt, any error was harmless.  Id.

It is improper for the government to ask a testifying defendant whether other witnesses are lying.  United States v. Schmitz, 634 F.3d 1247, 1268 (11th Cir. 2011).  But if the record reveals sufficient independent evidence of guilt, then the government's improper questions are deemed harmless because the questions did not change the outcome of the trial and, thus, did not affect the defendant's substantial rights.  United States v. Rivera, 780 F.3d 1084, 1097 (11th Cir. 2015).

8

Out-of-court statements offered for their truth are generally inadmissible as hearsay. Fed. R. Evid. 801(a)-(c), 802. When those statements are made by and offered against an opposing party, they are considered non-hearsay. Id. 801(d)(2)(A). A prior statement that is inconsistent with a witness's trial testimony is not hearsay if it was given under penalty of perjury at a trial, hearing, or other proceedings or in a deposition. Id. 801(d)(1)(A). A witness's prior consistent statement is admissible as non-hearsay if offered to rebut an expressed or implied charge that the witness recently fabricated it. Id. 801(d)(1)(B)(i).

Fed. R. Evid. 405(a) allows admission of evidence of a person's character or character trait through direct testimony about his reputation or through opinion testimony. Id. 405(a). On cross-examination, a party may inquire into specific instances of the person's conduct. Id. Specific instances of conduct may also be used to prove a character trait if it is an essential element of a charge, claim, or defense. Id. 405(b). Specific instances of a witness's conduct that relate to his character for truthfulness or untruthfulness may only be admitted on cross-examination if they are probative of the character for truthfulness or untruthfulness of that witness or another witness whose character the witness being cross-examined testified about. Id. 608(b). We will not reverse an erroneous evidentiary ruling if the resulting error did not substantially influence the outcome of the trial and

9

sufficient evidence independent of the error supported the verdict. See United States v. Barton, 909 F.3d 1323, 1330-31 (11th Cir. 2018).

Closing argument exists to assist the jury in analyzing the evidence. United States v. Reeves, 742 F.3d 487, 505 (11th Cir. 2014). While a prosecutor may not exceed the evidence presented at trial during his closing argument, he may state conclusions drawn from the trial evidence. Id. A prosecutor may urge the jury to draw inferences and conclusions from the evidence presented at trial. Rivera, 780 F.3d at 1100. A prosecutor's suggestion or comments are inappropriate if "calculated to mislead or inflame the jury's passions." United States v. Azmat, 805 F.3d 1018, 1044 (11th Cir. 2015).

In order to assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the context of the trial as a whole and assess their probable impact on the jury. United States v. Taohim, 817 F.3d 1215, 1224 (11th Cir. 2013) (quotation omitted). A prosecutor's remarks affect a defendant's substantial rights when there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different. Nerey, 877 F.3d at 970. A prejudicial remark may be counteracted by substantial evidence establishing guilt or rendered harmless by curative jury instructions. Id.

Here, prosecutorial misconduct did not deprive Neiheisel of a fair trial because the errors, if any, did not affect the outcome of the trial. As for the error in allowing

the government to ask him six questions about whether the agents' testimony was truthful and in allowing the government to ask him whether the agents had fabricated the statements in their reports, those questions did not affect Neiheisel's substantial rights. This is because the guilty verdict was supported by sufficient independent evidence of guilt, including his confession, the IP address evidence, the password-protected tablet and wireless home network, and his false testimony at trial. See Rivera, 780 F.3d at 1097. Nor did the district court abuse its discretion in denying Neiheisel's motion for a mistrial based on these questions because the error was harmless and the district court instructed the jury that they were to weigh the credibility of the witnesses themselves.

As for Neiheisel's challenge to questions to or testimony by the FBI agents referencing or quoting from their reports -- issues he did not object to below -- we review for plain error, and can find none. Among other things, the evidence was used properly as rebuttal testimony or to refresh the agents' recollections, and in all events, was harmless. As for Neiheisel's challenge to questions to Neiheisel's character witnesses -- most of which he did not object to and we review for plain error -- the government properly asked them about specific instances of conduct related to Neiheisel's character for truthfulness, in response their opinion testimony on direct examination that Neiheisel was honest and law-abiding.

11

As for Neiheisel's challenge to the government's remarks in closing -- suggesting that Neiheisel could have had another computer -- he again did not object to these below, and we again find no plain error.  The record reveals that the challenged remarks were not improper because they urged the jury to draw reasonable inferences from the evidence.  Rivera, 780 F.3d at 1100.  The evidence showed that child pornography had been downloaded from Neiheisel's IP address from a shared folder, Neiheisel had admitted to FBI agents that he had downloaded and stored child pornography on his tablet, and a forensic review of the seized tablet showed that it contained a file-sharing program but no child pornography.  Thus, based on this evidence, the government properly urged the jury to infer that the FBI had "got the wrong computer" and that Neiheisel had "pulled a fast one" when he gave them his tablet because the child pornography was on some other device.  Reeves, 742 F.3d at 505.  Further, the challenged remarks did not "permeate" the trial or even the government's closing argument because they occupied a few sentences of the government's entire rebuttal.  Bergman, 852 F.3d at 1070.  In short, Neiheisel has not demonstrated that the prosecutor's conduct warranted reversal.

### III.

We also reject Neiheisel's claim that the district court erred in denying his motion for a new trial.  On the defendant's motion, the district court may vacate the judgment and grant a new trial if the interest of justice so requires.  Fed. R. Crim. P.

33(a). Motions for new trials based on the weight of the evidence are disfavored and may only be granted if the evidence "preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Grzybowicz, 747 F.3d at 1310 (quotation and brackets omitted). We must affirm unless we find that the district court made a clear error of judgment or applied the wrong legal standard. Grzybowicz, 747 F.3d at 1305. But where the district court incorrectly applied the standard for a judgment of acquittal, viewing the evidence in the light most favorable to the government, to a motion for a new trial, we've nonetheless found that application of that standard was harmless error because the grant of a new trial would itself have been an abuse of discretion. United States v. Hernandez, 433 F.3d 1328, 1335-36 (11th Cir. 2005). In Hernandez, the trial testimony presented two conflicting stories, one of which supported the jury's guilty verdict, so the evidence did not preponderate heavily against the verdict. Id. at 1335-36. In addition, although the district court in Hernandez had questioned the credibility of the government's witnesses in denying the motion for a judgment of acquittal and new trial, it could not reweigh the evidence and set aside the verdict just because it felt another result would be more reasonable. Id. at 1332, 1336.

Here, we begin by noting that Neiheisel raised a motion for a new trial and a motion for a judgment of acquittal in the same filing, and the district court applied only the legal standard for a motion for a judgment of acquittal before dismissing

13

both motions.  But even though the district court did not separately discuss why it was denying Neiheisel's alternative motion for a new trial or the applicable legal standard for that motion, any error in failing to do so was harmless.  As we've discussed in detail, the FBI agents and Neiheisel presented two conflicting stories at trial, one of which supported the jury's guilty verdict.  Id. at 1335-36.  On this record, the district court would have abused its discretion had it granted a new trial because, even if the district court had independently found Neiheisel's version of events to be more credible, the evidence did not preponderate heavily against the verdict where one of the two conflicting versions of events supported the guilty verdict.  Id. at 1336-37.  Moreover, the court could not set the verdict aside simply because it felt that it was more reasonable to believe Neiheisel.  Id. at 1332, 1336.  Thus, the district court's error in not specifying the legal standard it was using was harmless.

## IV.

Next, we decline to consider Neiseisel's ineffective-assistance-of-counsel claim.  To succeed on an ineffective-assistance claim, the defendant must establish (1) that counsel's performance fell below an objective standard of reasonableness and (2) his deficient performance prejudiced the defense -- i.e., there's a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  However, we will consider an ineffective-assistance claim on direct appeal only if

that claim was sufficiently developed in the district court. United States v. Merrill, 513 F.3d 1293, 1308 (11th Cir. 2008). Typically, it is not, so we prefer to review these claims on collateral attack of the conviction under 28 U.S.C. § 2255. Id.

Here, we decline to consider Neiheisel's ineffective-assistance claim because it was not sufficiently developed in the district court. The only evidence related to the basis for his ineffective-assistance claim -- that his attorney knew about but failed to investigate a potential alibi -- was introduced during the ex parte hearing on the attorney's motion to withdraw. At that hearing, the attorney did not testify or otherwise address his knowledge, or lack thereof, regarding the potential alibi. Because, on this insufficiently developed record, we cannot determine whether the attorney failed to act as an objectively reasonable attorney would in regard to the alibi evidence, and because we typically prefer to review ineffective-assistance claims in post-conviction motions, we decline to address Neiheisel's ineffective-assistance-of-counsel claim that he raises for the first time on appeal.

## V.

Finally, we are unconvinced by Neiheisel's cumulative error argument. The cumulative effect of individual harmless errors requires reversal if, collectively, the otherwise harmless errors affected the defendant's substantial rights. United States v. Capers, 708 F.3d 1286, 1299 (11th Cir. 2013). We will reverse a conviction for

cumulative error if the cumulative effect of the district court's errors was prejudicial, even if each individual error was harmless.  Azmat, 805 F.3d at 1045.

Our review of the record reveals, at most, three harmless errors, as we've mentioned above.  But these errors, even when viewed together, did not affect Neiheisel's substantial rights because they did not affect the outcome of the trial.  Viewed along with the other evidence, the jury could still have reasonably credited the FBI agents' testimony over Neiheisel and found that he knowingly distributed child pornography.  Capers, 708 F.3d at 1299.  Accordingly, we affirm.

**AFFIRMED**.